# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| RODMAN and ROSELINE THOMS, | ) | Case No.: 2:10-cv-00482-GMN-RJJ |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| AMERICA'S SERVICING CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case arises out of the foreclosure of Plaintiffs' mortgage.  Pending before the Court is Defendant America's Servicing Company's--a.k.a. Wells Fargo Home Mortgage--Motion to Dismiss, or in the alternative, for Summary Judgment, and for Release of Lis Pendens (ECF No. 4).  For the reasons given herein, the Court grants the Motion for Summary Judgment as to the first cause of action for promissory estoppel, grants the Motion to Dismiss as to the third cause of action for tortious misrepresentation, and denies the Motion as to the second and fourth causes of action for wrongful foreclosure and injunctive relief.

## I.       FACTS AND PROCEDURAL HISTORY

On or about March 13, 2007, Plaintiffs Rodman and Roseline Thoms jointly purchased a property located at 6813 Megan Ave., Las Vegas, NV 89108 (the "Property") for $228,750. (ECF No. 4, Ex. B, at 2, 3, 16.)[1]  The First Deed of Trust lists Plaintiffs as joint borrowers, Aegis Wholesale Corp. ("Aegis") as lender, First American Title Co. ("First American") as trustee, and Mortgage Electronic Registration Systems

---

[1] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the public records adduced by Defendant, (*see* ECF No. 4, Exs. A–H). *See Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

1  ("MERS") as "nominee" and "beneficiary." (*See id.*, Ex. B., at 1–2.)  The Second Deed

2  of Trust, which lists the same borrowers, lender, trustee, and "nominee/beneficiary," and

3  which was also signed on March 13, 2007, secures a second loan for $45,750, apparently

4  a home equity loan. (*See id.*, Ex. C., at 1–2, 4, 20.)

5          On September 1, 2009, National Default Servicing Corp. ("NDSC"), as agent for

6  Defendant, recorded a Notice of Default and Election to Sell ("NOD") based on

7  Plaintiffs' default on the first mortgage in the amount of $8030.51. (*See id.*, Ex. D.)[2]  On

8  November 16, 2009, MERS, as nominee for Aegis, purported to assign the beneficial

9  interest in the First Deed of Trust to Defendant. (*See* ECF No. 4, Ex. E.)  On the same

10  date, Defendant purported to substitute NDSC as trustee of the First Deed of Trust. (*See*

11  *id.*, Ex. F.)  On December 29, 2009, a program manager of the State of Nevada

12  Foreclosure Mediation Program certified that Plaintiffs had either failed to request

13  mediation or had waived mediation, and affirmed that the foreclosure could proceed. (*See*

14  *id.*, Ex. G.)  On February 11, 2010, NDSC recorded a Notice of Trustee's Sale, indicating

15  that a sale would occur on March 3, 2010. (*See id.*, Ex. H.)

16          Plaintiffs filed the Complaint in state court on February 24, 2010, listing four

17  causes of action against Defendant: (1) Promissory Estoppel; (2) Wrongful

18  Foreclosure/Quiet Title; (3) "Tortious" Misrepresentation;[3] and (4) Preliminary and

19  Permanent Injunction. (*See* ECF No. 1.) Defendant has moved to dismiss or for summary

20  judgment, and to lift the lis pendens.

21  **III.   LEGAL STANDARDS**

22          **A.      Rule 12(b)(6)**

23          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

24

25

---

[2] Plaintiffs admit default but allege that Defendant agreed to modify the mortgage. (*See* ECF No. 1 ¶¶ 4–8.)
[3] Neither negligent nor intentional misrepresentation is specified.

of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion

to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### B.      Rule 56(c)

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its

case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See*

*Anderson*, 477 U.S. at 249.   The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.   But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## C.   Foreclosure Law and MERS

Further examination of the role of various entities with respect to deeds of trust is in order, as the present glut of mortgage-related lawsuits has brought into controversy the scope of the powers of various kinds of parties listed on deeds of trust.  Black's Law Dictionary lists three definitions for "nominee." Black's Law Dictionary 1149 (9th ed. 2009).  The first definition has to do with candidates for public office, memberships, or awards.  The second definition is relevant in the present context.  "2. A person designated to act in place of another, [usually] in a very limited way." *Id.*   In short, a nominee is an agent with limited powers, akin to a special power of attorney.  This applies to cases such as the present one, where an entity is nominated on a deed of trust by the holder of a promissory note, with the limited role of administering the deed of trust on the holder's behalf.  Part of the confusion seems to result from the fact that the scope of this role is not often stated clearly on the deed of trust, but is simply taken for granted by those in the mortgage industry.  Plaintiffs also sometimes allude, as in the present action, to the third and last definition of "nominee," pointing out that the nominee only has legal title:  "A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Id.*   Plaintiffs then claim that this does not entitle such a nominee to substitute a trustee on behalf of the holder.  This argument, however, assumes that the third definition of "nominee" is exhaustive.  Here, the second definition of nominee indicates that a nominee is a limited agent.  In the context of a nominee on a deed of trust, this implies that the nominee is granted authority as an agent to act on

behalf of the nominator--the holder of the promissory note--as to administration of the deed of trust, which would include the authority to substitute trustees.  The third definition of "nominee" does not negate the second.  It simply notes that a nominee is a party holding legal title, as opposed to equitable title, to the property.  This third definition is given in the context of receiving and distributing funds.  Assuming it can be applied to the mortgage context, the nominee would be a person who administers the deed of trust for the benefit of others.  This creates no conflict with the second definition. It still indicates that a nominee is a kind of agent working for the benefit of another.  In the present case, that other person is the nominator--the holder of the promissory note or other obligation secured by the deed of trust.

The trouble typically begins when a nominee--nearly always MERS--substitutes a new trustee on the deed of trust, which it has the right to do as the holder's nominee.  The substituted trustee then forecloses when the mortgagor/trustor defaults on the promissory note.  The mortgagor/trustor then complains that the foreclosing trustee is acting wrongly because it does not itself hold the promissory note, or because it was not the original trustee on the deed of trust, or because the foreclosing trustee was substituted by an entity--usually MERS--that was not an agent of the original or subsequent holder of the note.  Oftentimes, the argument the mortgagor/trustor makes is not clear.  But one thing is clear: so long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is simply no defect in foreclosure, at least in states such as Nevada where a trustee may foreclose non-judicially.

Another source of confusion is the fact that MERS is usually named not only as a nominee, but also as a "beneficiary" on deeds of trust.  This unorthodox usage of the word "beneficiary" causes all manners of havoc.  Oftentimes, it is clear that defendants in

these actions do not understand the source of the confusion themselves, as they use the word "beneficiary" without attempting to untangle the confusion. Black's gives three definitions for this word. The first definition is the commonest one: "A person for whose benefit property is held in trust; [especially] one designated to benefit from an appointment, disposition, or assignment (as in a will, insurance policy, etc.), or to receive something as a result of a legal arrangement or instrument." *Id.* at 176. From this common definition of the word, plaintiffs typically conclude that, because MERS does not stand to benefit directly from the foreclosure and has no right to sue on the promissory note --which are both almost always true, MERS cannot possibly be a "beneficiary." It is correct that MERS is not a beneficiary simply because it has been called one in the deed of trust. MERS may be a beneficiary, of course, if it owns the underlying debt, but this is almost never the case. In the typical case, MERS is simply the nominee of the true beneficiary. Often, the beneficiary--the lender/nominator--will indicate this distinction on the deed of trust by referring to MERS as the "beneficiary of record." This is a fiction. MERS is not a beneficiary in any ordinary sense of the word. Referring to MERS as a beneficiary is what causes much of the confusion in these cases. To a large extent, defendants in these actions have brought this mass of litigation upon themselves by this confusing, unorthodox, and unnecessary use of the word "beneficiary" to describe MERS' role. A lender/nominator need only refer to MERS as a "nominee." This is sufficient to establish that MERS is the agent of the lender with respect to administration of the deed of trust.

In summary, calling MERS a "beneficiary" is both incorrect and unnecessary. In Nevada, the beneficiary is not the only entity that can record the notice of breach and election to sell--the trustee may do this. Nev. Rev. Stat. § 107.080(c). So there is simply no need for a lender to call MERS a "beneficiary" to facilitate a foreclosure. The trustee

or "other person authorized to make the sale under the terms of the trust deed" may make the sale. § 107.080(4).  There is no need for the beneficiary to make the sale.

A possible defect in foreclosure remains when a note has been negotiated without evidence that the foreclosing trustee was substituted by the beneficiary or his nominee. In many cases, banks, title companies, or MERS purport to transfer the beneficial interest in the underlying debt merely by assigning the deed of trust itself.  In this regard, defendants often conflate the transfer of a deed of trust with the transfer of the underlying debt.  The security instrument--i.e., the mortgage or deed of trust--follows the note, not the other way around. *Hill v. Favour*, 52 Ariz. 561, 568 (1938) ("The law seems to be well settled that the mortgage is a mere incident to the debt and that its transfer or assignment does not transfer or assign the debt or the note.  The mortgage goes with the note.  If the latter is transferred or assigned, the mortgage automatically goes along with the assignment or transfer.").  This has been the law in California since before the Civil War. *Ord v. McKee*, 5 Cal. 515, 516 (1855) ("A mortgage is a mere incident to the debt which it secures, and follows the transfer of a note with the full effect of a  regular assignment."); *see also United States v. Thornburg*, 82 F.3d 866, 892 (9th Cir. 1996) (citing Cal. Civ. Code § 2936; *Murrell v. Griswold*, 338 P.2d 150, 154 (Okla. 1959)). One  cannot transfer the beneficial interest in underlying debt merely by assigning the security  instrument.  "It is axiomatic that any attempt to assign the mortgage without transfer of the debt will not pass the mortgagee's interest to the assignee." *In re BNT Terminals, Inc.*, 125 B.R. 963, 970 (Bankr. N.D. Ill. 1990) (citing *Webb v. Hoselton*, 4 Neb. 308 (1876) ("The mortgage is a     mere incident to the debt and passes with it, and *nothing whatever passes by an assignment of the mortgage, without the note or debt*.")

/ / /

/ / /

(emphasis added)).[4]

## IV.    ANALYSIS

### A.    Promissory Estoppel

Promissory estoppel is an equitable doctrine whereby a party who reasonably relies to his detriment on the promise of another may enforce a verbal contract against the other party, though the other party has given no consideration; it is a substitute for consideration. *See, e.g.*, *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984); Restatement (Second) of Contracts § 90 (1981).  A prima facie case of promissory estoppel has four elements in Nevada: "(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped. *Pink*, 691 P.2d at 459 (quoting *Cheger, Inc. v. Painters & Decorators Joint Comm., Inc.*, 655 P.2d 996, 998–99 (Nev. 1982)).

Promissory estoppel is a common-law exception to the common-law element of consideration normally required in a contract, but it is not generally an exception to the statute of frauds, except in very particular circumstances. *See, e.g.*, *Heyman v. Adeack Realty, Inc.*, 228 A.2d 578, 580 (R.I. 1967); *Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d 546, 554 (Tex. App. 2009) (citation omitted); *Shore Holdings, Inc. v. Seagate Beach*

---

[4] MERS has attempted to avoid this well-settled pillar of property law via its creation of an unregulated market where interests in mortgages are speculatively traded, like futures in soybeans and pork bellies, but with less transparency.  A multi-district litigation case is currently pending in the District of Arizona to consider cases where plaintiffs in various districts have brought civil conspiracy, RICO, and similar causes of action against MERS, alleging that its very formation and operation is an actionable, illegal conspiracy.  The Court need not examine this question in the present case.  Conspiracy or no, an attempt to transfer the beneficial interest in underlying debt by merely assigning an attendant security instrument is legally ineffectual. *Hill*, 52 Ariz. at 568; *Webb*, 4 Neb. at 308; *Ord*, 5 Cal. at 516.

*Quarters, Inc.*, 842 So. 2d 1010, 1012–13 (Fla. Dist. Ct. App. 2003).  In some states, partial performance of a real estate contract, in conjunction with an oral promise, can defeat the statute of frauds. *See, e.g.*, *Kolkman v. Roth*, 656 N.W.2d 148, 152 (Iowa 2003).  Promissory estoppel can also defeat the statute of frauds where the alleged promise is not a promise to perform, but a promise to sign a document that itself complies with the statute of frauds. *See, e.g.*, *Ortiz v. Collins*, 203 S.W.3d 414, 424 (Tex. App. 2006).  Here, Plaintiffs make no claim arising under either fact pattern.  Plaintiffs allege that Defendant made a promise to perform; that Defendant made a promise to modify the existing promissory note, in an unspecified manner.

The Restatement also indicates that the statute of frauds can be overcome by promissory estoppel where necessary to avoid injustice. Restatement (Second) of Contracts § 139.  The law surrounding the Nevada statute of frauds is strict.  An oral agreement concerning real estate that is not in writing is void. *Dolge v. Masek*, 268 P.2d 919, 922 (Nev. 1954).  It is not impossible to avoid the statute of frauds with respect to a transaction involving an interest in land in Nevada, but "[t]o avoid the Nevada Statute of Frauds in a transaction involving land, a party must prove estoppel or part performance by an 'extraordinary measure . . . of evidence.'" *Waters v. Weyerhaeuser Mortgage Co.*, 582 F.2d 503, 506 (Nev. 1978) (citations omitted).  Plaintiffs have not met this burden.

Plaintiff's stock argument that they "would have taken other alternatives such as filing a bankruptcy or filing this underlying action prior to the foreclosure in order to thwart a foreclosure," (Compl. ¶ 14), is not enough to survive summary judgment in the context of a promissory estoppel claim concerning a land transaction.  Even under a promissory estoppel theory, a contract cannot be created by one party's subjective expectations. *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989) (employment contract).  Reasonable reliance means objectively reasonable reliance, and an invitation

to negotiate is not an offer. *See State v. Delaney*, 598 A.2d 138, 142 (Vt. 1991); *Chang v. First Colonial Savs. Bank*, 410 S.E.2d 928, 930 (Va. 1991).  Plaintiffs admit default, and cannot have reasonably relied by foregoing the opportunity to file a stalling action in the face of foreclosure.

Furthermore, there is no evidence to support the second element of promissory estoppel.  Plaintiffs do not claim that Defendant intended that its conduct would be acted upon or acted such that Plaintiffs had the right to believe it was so intended. *See Pink*, 691 P.2d at 459 (quoting *Cheger*, 655 P.2d at 999).  There is certainly no "extraordinary evidence" of this.  Also, Plaintiffs cannot plausibly allege any damages from the alleged breach of the oral promise, because they admit default.  Even assuming such a promise were made, the only thing Plaintiffs can be said to have lost is a gratuity--the unilateral reduction of mortgage payments--not the benefit of any bargain.  Plaintiffs' refusal to engage in the mediation program under state law only worsens their position.

Defendant has shown that a reasonable jury could not find that Plaintiffs have met their burden of proof on the promissory estoppel claim, and Plaintiffs have not met their shifted burden to establish a genuine issue of material fact.  Plaintiffs' evidence is limited to a claim in a verified complaint that a verbal promise was made by an unidentified representative.  This allegation is not an "extraordinary measure or quantum of evidence" of the elements of promissory estoppel. *Zunino v. Paramore*, 435 P.2d 196, 197 (Nev. 1967).  No witnesses provide affidavits to corroborate any promise; there is no evidence of any document prepared for signature; and there is no other evidence of an offer. Plaintiffs have not met their shifted burden to show a genuine issue of material fact.  The Court thus grants the Motion for Summary Judgment as to the first cause of action.

## B.    Wrongful Foreclosure/Quiet Title

Recounting the events leading to the present case: on or about March 13, 2007,

Plaintiffs Rodman and Roseline Thoms jointly purchased a property located at 6813 Megan Ave., Las Vegas, NV 89108 (the "Property") for $228,750. (ECF No. 4, Ex. B, at 2, 3, 16.)  The First Deed of Trust lists Plaintiffs as joint borrowers, Aegis Wholesale Corp. ("Aegis") as lender, First American Title Co. ("First American") as trustee, and Mortgage Electronic Registration Systems ("MERS") as "nominee" and "beneficiary." (*See id.*, Ex. B., at 1–2.)  The Second Deed of Trust, which lists the same borrowers, lender, trustee, and "nominee/beneficiary" and which was also signed on March 13, 2007, secures a second loan for $45,750, apparently a home equity loan. (*See id.*, Ex. C., at 1–2, 4, 20.)

On September 1, 2009, National Default Servicing Corp. ("NDSC"), as agent for Defendant, recorded a Notice of Default and Election to Sell ("NOD") based on Plaintiffs' default on the first mortgage in the amount of $8030.51. (*See id.*, Ex. D.)[5]  On November 16, 2009, MERS, as nominee for Aegis, purported to assign the beneficial interest in the First Deed of Trust to Defendant. (*See* ECF No. 4, Ex. E.)  On the same date, Defendant purported to substitute NDSC as trustee of the First Deed of Trust. (*See id.*, Ex. F.)  On December 29, 2009, a program manager of the State of Nevada Foreclosure Mediation Program certified that Plaintiffs had either failed to request mediation or had waived mediation, and affirmed that the foreclosure could proceed. (*See id.*, Ex. G.)  On February 11, 2010, NDSC recorded a Notice of Trustee's Sale, indicating that a sale would occur on March 3, 2010. (*See id.*, Ex. H.)

There are several potential problems with this series of events.  At common law, a wrongful foreclosure action only lies where there is no default.  However, there are additional statutory requirements for foreclosure.  In Nevada, the beneficiary, the trustee,

---

[5] Plaintiffs admit default but allege that Defendant agreed to modify the mortgage. (*See* ECF No. 1 ¶¶ 4–8.)

or an agent of one of these entities must record the NOD. Nev. Rev. Stat. § 107.080(c). Here, it appears that NDSC was indeed an agent of Defendant when it recorded the NOD. (*See id.*, Ex. D.)  However, there are still potential problems with the foreclosure.

First, NDSC recorded the NOD on behalf of Defendant on September 1, 2009, over two months before MERS purported to transfer the beneficial interest in the loan from Aegis to Defendant. (*Compare* ECF No. 4, Ex. D, *with id.*, Ex. E.)  In other words, Defendant was a stranger to the loan when it instructed NDSC to record the NOD.  This is a statutory defect in foreclosure.

Second, even if Defendant had caused the NOD to be recorded only after MERS purported to assign the beneficial interest in the loan to Defendant, MERS' assignment to Defendant was an assignment of the deed of trust only, not of the beneficial interest. (*See id.*, Ex.  E).  Such an assignment is ineffectual to transfer the beneficial interest in the loan. *Hill*, 52 Ariz.  at 568; *Webb*, 4 Neb. at 308; *Ord*, 5 Cal. at 516.  The assignment is entitled "Corporation Assignment of Deed of Trust," indicating an invalid transfer.  On the other hand, the body of the assignment purports to transfer "all beneficial interest under that certain Deed of Trust . . . ." (ECF No. 4, Ex. E.)  Such a transfer could be effective, but only if MERS had the ability to make such a transfer on behalf of Aegis.  The language of the First Deed of Trust is not unambiguous as to whether Aegis intended MERS to have its power of attorney for the purpose of transferring the beneficial interest in the loan--the designation as "beneficiary" is ambiguous, because Aegis was clearly the beneficiary unless and until it transferred the note to another party--and even if it were unambiguous, Defendant caused the NOD to be recorded before it had any interest in the loan.

In conclusion, because Defendant caused NDSC to record the NOD before Defendant had any interest in the loan, and because it is also possible that MERS never

had the ability to transfer the beneficial interest to Defendant at all, the Court denies the Motion as to the second cause of action for wrongful foreclosure/quiet title.

### C.    Tortious Misrepresentation

There are at least three kinds of tortious misrepresentation.  In most states, including Nevada, the torts of negligent misrepresentation and intentional misrepresentation--i.e., common law fraud--are recognized. *See, e.g.*, *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006) (negligent); *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) (intentional).  In one state, a cause of action may also lie for "strict responsibility misrepresentation." *See Van Lare v. Vogt, Inc.*, 683 N.W.2d 46, 54 (Wis. 2004).  The third cause of action in this case potentially implicates intentional misrepresentation and negligent misrepresentation. The elements of intentional misrepresentation in Nevada are:

1.  A false representation made by the defendant;

2.  Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);

3.  Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

4.  Plaintiff's justifiable reliance upon the misrepresentation; and

5.  Damage to the plaintiff resulting from such reliance.

*Bulbman*, 825 P.2d at 592.

Under Rule 9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b).  This has been construed to require a plaintiff to "state precisely the time, place and nature of the misleading statements, misrepresentations and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).  A plaintiff must plead facts such as "he bought a house from defendant, that the defendant assured

him that it was in perfect shape, and that in fact the house turned out to be built on a landfill . . . ." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).  The plaintiff must also "set forth an explanation as to why the statement or omission complained of was false and misleading." *In re GlenFed Sec. Litig.*, 42 F.3d at 1548.

Next, a claim for negligent misrepresentation requires a plaintiff to plead:

1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

*G.K. Las Vegas Ltd. P'ship*, 460 F. Supp. 2d at 1262.  Negligent misrepresentation must also be pled with particularity. Fed. R. Civ. P. 9(b).  It is not clear whether intentional or negligent misrepresentation is intended to be pled, but neither claim is sufficiently pled. There is no allegation of any misrepresentation of past or present facts.

The third cause of action is essentially the promissory estoppel claim recast as "misrepresentation."  No misrepresentation claim, either intentional or negligent, arises from a false promise to perform in the future.  Plaintiff conflates misrepresentation with promissory estoppel; the former is based on a misrepresentation of an existing fact, whereas the latter is based on a misstatement of future intentions. *See, e.g.*, *Corbett v. Firstline Sec., Inc.*, No. 08-cv-5124 (ADS)(WDW), 2009 WL 4643391, at *6 (E.D.N.Y. Dec. 9, 2009); *Deutsche Bank Nat'l Trust Co. v. Sinclair*, 2009 WL 485 6409, at *2 (N.Y. App. Div. 2009).  The latter action has been separately pled.  Moreover, the "time, place and nature of the misleading statements" are not alleged.  The Court therefore grants the Motion to Dismiss as to the third cause of action for tortious misrepresentation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### D.    Injunctive Relief

The Ninth Circuit in the past used two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*  The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "*likely*," not just possible. *Winter v. NRDC*, 129 S. Ct. 365, 374–76 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test).  The Ninth Circuit has explicitly recognized that its alternative test was overruled by *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374).

Plaintiff claims that Defendants have wrongfully foreclosed for the reasons outlined above.  Recently, the Court has granted ninety-day preliminary injunctions in similar cases in order to permit plaintiffs time to utilize Nevada's delinquent mortgage mediation program. *See* Nev. Rev. Stat. § 107.086 (2009).  Here, however, Plaintiffs

have already refused to participate in this program. (*See* ECF No. 4, Ex. G.)

Still, there appears to be a potential irregularity in foreclosure, and the home has apparently not been sold to a bona fide purchaser, making injunctive relief plausible. The Court therefore denies Defendant's Motion as to this cause of action.  Because this claim and the cause of action for wrongful foreclosure remain, the Court also denies Defendant's Motion for Release of Lis Pendens.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (ECF No. 4) as to the first cause of action for promissory estoppel is GRANTED; the Motion to Dismiss (ECF No. 4) as to the third cause of action for tortious misrepresentation is GRANTED; and the Motion (ECF No. 4) as to the second and fourth causes of action for wrongful foreclosure and injunctive relief, respectively, is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Release of Lis Pendens (ECF No. 4) is DENIED.

DATED this 1st day of October, 2010.

_____
Gloria M. Navarro
United States District Judge